UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Patrick Michael Belser,

Petitioner,

v.

Ron Haynes,

Respondent.

CASE NO. 20-cv-05228-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: AUGUST 14, 2020

The District Court has referred this action to United States Magistrate Judge J. Richard Creatura. Petitioner Patrick Michael Belser, proceeding *pro se*, filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court judgment and sentence. *See* Dkt. 4.

Petitioner seeks habeas relief from his convictions of rape of a child in the second and third degrees, child molestation in the second and third degrees, and sexual exploitation of a minor. Dkt. 4; 11, Exhibit 1. In both grounds for relief, petitioner alleges that his decision to waive the right to counsel at trial was invalid. However, petitioner received the information that was required to make a knowing decision to waive counsel, and he made that decision

REPORT AND RECOMMENDATION - 1

1    intelligently in possession of that knowledge. Petitioner he has not shown that the state court's

2    decision was contrary to, or an unreasonable application of, clearly established federal law.

3    Therefore, the undersigned recommends that the petition be denied and a certificate of

4    appealability not be issued.

5    **I.        Background**

6          A.    Factual Background

7          In a Clark County Superior Court jury trial, petitioner was found guilty of rape of a child

8    in the second and third degrees, child molestation in the second and third degrees, and sexual

9    exploitation of a minor. Dkt. 11, Exhibit 1. Petitioner was sentenced to 350 months confinement

10   on September 18, 2017. *Id.* The Washington Court of Appeals summarized the facts underlying

11   petitioner's convictions as follows:

12          In 2015, the State charged Belser in Clark County with second degree
      child rape (count 1), second degree child molestation (count 2), third degree child
13    molestation (counts 3 and 5), third degree child rape (count 4), and sexual
      exploitation of a minor (count 6). Each count charged an aggravating factor that the
14    defendant used his position of trust to facilitate the commission of the offenses.
      Counts 1, 2, 3, and 6 also charged an aggravating factor that the offense was part of
15    an ongoing pattern of sexual abuse. [court's footnote. Belser apparently had been
      charged with similar crimes in King County and spent a year in custody before the
16    King County charges were dismissed] The State alleged that Belser committed these
      offenses against three minors between January 13, 2002 and June 16, 2011.

17
          Before trial, Belser requested that he be allowed to represent himself. The
18    trial court engaged Belser in a colloquy in which the court discussed the charged
      offenses. When the court began informing Belser about the potential sentences for
19    the charged crimes, defense counsel interrupted and stated:

20          We have gone over that, Your Honor, multiple times in terms of the, the
      offer in King County. Once again, he has discussed that with his attorney
21    up there, he and I have discussed it at length, it was discussed, obviously
      plea negotiations and things of that nature, so I'm confident that he's
22    well aware. That's something that I've impressed upon him, most
      importantly based on his request to go *pro se*.

23

24

1    Report of Proceedings (RP) at 31. And the State then pointed out that Belser was
2    facing 210 to 280 months on an indeterminate sentence under the Indeterminate
     Sentence Review Board (ISRB) for the second degree rape charge.

3         The trial court informed Belser that the charges were strike offenses under the
     persistent offender statute and that if convicted of an additional strike offense, he
4    could be sentenced to life in prison without the possibility of release. The court also
     explained that if Belser was convicted and was sentenced within the standard range,
5    the ISRB could determine that he needed to remain in custody for the remainder
     of his life.

6
7         THE COURT: ... [T]his is an ISRB case, you've had that explained to
          you?

8         DEFENDANT: Yes, sir.

9         THE COURT: So, you understand that even if you were convicted and the
          Court sentenced you to something within the standard his Review Board
10        could determine you still need to remain in custody.

11        DEFENDANT: I, I understand that.

12        THE COURT: Potentially up to life.

13        DEFENDANT: Yes, sir.

14   RP at 34.

15        The court found that Belser's waiver of his right to counsel was knowing,
16   intelligent, and voluntary and granted his motion to represent himself. Belser
     proceeded to trial with his former defense attorney as standby counsel.

17        All three victims testified as did their brother, who observed one of the
18   sexual assaults. ZR testified that Belser sexually assaulted him between 2002 and
     2006. JM testified that Belser sexually assaulted him between 2009 and 2011. GP
19   testified that Belser instructed him to masturbate in front of Belser between 2003
     and 2010. CP testified that he saw Belser fondling GP. Belser's defense at trial
20   was that these reported events occurred outside the charging periods.

21        The jury found Besler guilty as charged, including the aggravating factors.
22   The trial court imposed 230 months on count 1, 116 months on count 2, 60 months on
     counts 3, 4, and 5, and 120 months on count 6. The court ordered Belser to serve
23   count 1 consecutively to counts 2-6, which constituted an exceptional sentence,
     with total confinement of 350 months.

24

REPORT AND RECOMMENDATION - 3

1  Dkt. 11, Exhibit 2 at 1-3.

2      B.  Procedural Background

3      Petitioner challenged his judgment and sentence on direct appeal. *See* Dkt. 11, Exhibit 3,

4  4, 5, 6. The Washington Court of Appeals affirmed petitioner's convictions and sentence. Dkt.

5  11, Exhibit 2. Petitioner sought discretionary review by the Washington Supreme Court. Dkt. 11,

6  Exhibit 7. The Washington Supreme Court denied review without comment on September 4,

7  2019. Dkt. 11, Exhibit 8. The Washington Court of Appeals issued the mandate on December 10,

8  2019. Dkt. 11, Exhibit 9.

9      On March 12, 2020, petitioner initiated his federal petition. Dkt. 1. Petitioner raises two

10  grounds for relief which allege that his waiver of counsel was not knowing, intelligent, and

11  voluntary because the judge did not inform him of the nature of the charges or the maximum

12  penalties if convicted. Dkt. 4 at 16, 21.

13      On May 29, 2020, respondent filed an answer and memorandum of authorities. Dkt. 10.

14  In the answer, respondent concedes that petitioner exhausted each ground for relief, but

15  maintains that the state court's adjudication of the grounds raised in the petition was not contrary

16  to, or an unreasonable application of, clearly established federal law. *Id*. Petitioner filed a

17  traverse on June 11, 2020. Dkt. 12.

18  **II.    Discussion**

19      Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the

20  basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

21  decision that was contrary to, or involved an unreasonable application of, clearly established

22  Federal law, as determined by the Supreme Court of the United States." In interpreting this

23  portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to"

24

clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

The Court notes a state court adjudicates a claim "on the merits" for purposes of § 2254(d) when it decides the petitioner's right to relief based on the substance of the federal

1    claim, rather than on another basis precluding state court merits review. *Runningeagle v. Ryan*,

2    686 F.3d 758, 768–69 (9th Cir. 2012) (citing *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011)

3    (when a state court decision is ambiguous, and so it is "a close question" on whether the state

4    court denied a petitioner's claim on procedural grounds or on the merits, a federal court must

5    presume that the state court adjudicated the claim on the merits)).

6        In both grounds for relief, petitioner alleges that he did not make a valid waiver of the

7    right to counsel when he chose to represent himself at trial because the judge did not inform him

8    of the nature of the charges or the maximum penalty that he faced if convicted. Dkt. 4.

9        The Sixth Amendment affords a criminal defendant both the right to counsel at trial and

10   the right to self-representation at trial. *Faretta v. California,* 422 U.S. 806, 807 (1975). When a

11   defendant seeks to represent himself at trial, he must "knowingly and intelligently" waive the

12   right to counsel, aware "of the dangers and disadvantages of self-representation." *Id.* at 835;

13   *Iowa v. Tovar,* 541 U.S. 77, 88 (2004) (citing *Adams v. McCann,* 317 U.S. 269, 279 (1942)

14   (describing waiver of counsel as intelligent "when the defendant 'knows what he is doing and his

15   choice is made with eyes open.'").  A trial court need not follow an exact script, but the

16   defendant must be informed of "'1) the nature of the charges against him, 2) the possible

17   penalties, and 3) the dangers and disadvantages of self-representation.'" *United States v. Hantzis,*

18   625 F.3d 575, 579-80 (9th Cir. 2010) (quoting *United States v. Erskine,* 355 F.3d 1161, 1167

19   (9th Cir. 2004)); *Campbell v. Virga*, 613 F. App'x 651 (9th Cir. 2015). Although Supreme Court

20   precedent provides the only relevant source of clearly established federal law for AEDPA

21   purposes, circuit precedent can be "persuasive authority for purposes of determining whether

22   particular state court decision is an 'unreasonable application' of Supreme court law," and in

23

24

1  ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600–01
2  (9th Cir. 2000).

3        The information necessary for a defendant to make an intelligent waiver will depend on
4  the facts and circumstances of each case. *Tovar*, 541 U.S. at 88. As stated by the Supreme Court:
5  "'[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the
6  defendant fully understands the nature of the right and how it would likely apply in general in the
7  circumstances—even though the defendant may not know the *specific detailed* consequences of
8  invoking it.'" *Tovar*, 541 U.S. at 92 (quoting *United States v. Ruiz,* 536 U.S. 622, 629 (2002)
9  (emphasis in original)); *See also United States v. Balough,* 820 F.2d 1485 (9th Cir. 1987)
10 (citation omitted) ("Absent a [court's] discussion of the three elements, we will look to the
11 particular facts and circumstances surrounding that case, including the background, experience
12 and conduct of the accused to determine whether the waiver was knowing and intelligent despite
13 the absence of a specific inquiry on the record."). Also, "[i]n a collateral attack on an
14 uncounseled conviction, it is the defendant's burden to prove that he did not competently and
15 intelligently waive his right to the assistance of counsel." *Tovar*, 541 U.S. at 92.

16       In the instant case, the Washington Court of Appeals determined that petitioner validly
17 waived the right to counsel, applying the standard as set forth in *Faretta*:

18       Article I, section 22 of the Washington Constitution and the Sixth
         Amendment to the United States Constitution guarantee a criminal defendant the
19       right to assistance of counsel. A criminal defendant also has a right to self-
         representation under the same provisions. *State v. Madsen*, 168 Wn.2d 496, 503,
20       229 P.3d 714 (2010). The right of self-representation is "so fundamental that it is
         afforded despite its potentially detrimental impact on both the defendant and the
21       administration of justice." *Id.*

22       However, a tension exists between the rights of self-representation and to
         counsel. *Howard*, 1 Wn. App. 2d at 424. By requesting to represent himself, a
23       defendant waives his right to counsel. *Id.* at 425. Therefore, criminal defendants  do
         not have an absolute right to self-representation. *Id.* A trial court may allow a

24

defendant to represent himself only if the defendant waives his right to counsel voluntarily, knowingly, and intelligently. *Id.* And a criminal defendant has a right to self-representation only if the right to counsel is properly waived. *Id.*

The trial court must indulge every reasonable presumption against waiver of the right to counsel. *Madsen*, 168 Wn.2d at 504. And the trial court may deny a request for self-representation if the request is "made without a general understanding of the consequences." *Id.* at 505.

The preferred method for determining whether waiver is valid is through a colloquy on the record between the trial court and the defendant. *Howard*, 1 Wn. App. 2d at 425. For the trial court's colloquy to be sufficient, this court has strictly adhered to certain requirements: "'Th[e] colloquy, *at a minimum*, should consist of informing the defendant of the nature and classification of the charge, *the maximum penalty upon conviction* and that technical rules exist which will bind defendant in the presentation of his case.'" *Id.* at 426 (quoting *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984) ). If the trial court does not address those issues in its colloquy, the record must otherwise show that the defendant was properly informed. *Howard*, 1 Wn. App. 2d at 428.

The maximum sentence for the charged crime is a particularly important consideration for self-representation.

> The maximum penalty for the charged crime is essential information that a defendant needs in deciding whether to represent himself or herself. A defendant may be willing to represent himself or herself when facing a lesser penalty but not when facing a greater penalty. Therefore, if a defendant does not know the maximum penalty for the charged crime, we cannot say that the defendant is making the decision to represent himself or herself knowingly.

*Id.* at 429. As a result, "a waiver of the right to counsel is invalid if the trial court does not inform the defendant of the maximum penalty for the charged crime and the defendant is not otherwise aware of the maximum penalty." *Id.*

2.    Waiver Analysis

Belser claims that the trial court's colloquy was inadequate because the court did not inform him (1) of the nature and classification of the charged offenses, (2) the maximum sentence that could be imposed upon conviction, (3) that an indeterminate sentence was required for second degree child molestation, and (4) that there was a potential for an exceptional sentence based on the aggravating factor allegations. Although the trial court's colloquy could have been more detailed, the record shows that Belser received sufficient information to make his waiver of counsel knowing and intelligent.

First, the trial court did not expressly discuss with Belser the nature and classification of the charged offenses. The better practice would have been for the court to expressly do so for each charge. However, the court made it clear that this was a persistent offender case and that if Belser was convicted and then convicted of another strike offense, he could be sentenced to life imprisonment without the possibility of release. This informed Belser of the nature of at least some of his charges.

In addition, we can consider other parts of the record to determine if the defendant was properly informed. *See Howard*, 1 Wn. App. 2d at 428. Here, at his first appearance Belser was served with a copy of the information. The information detailed the charges against him and stated that three of the charges (counts 1, 2 and 6) involved "most serious offenses" pursuant to the Persistent Offender Accountability Act, RCW 9.94A.570. And defense counsel stated that she had cautioned Belser about self-representation "especially based on the nature of the charges and seriousness of them." RP at 27.

The record is sufficient for us to conclude that Belser was informed of the nature and classification of the charged crimes.

Second, the trial court did not expressly discuss with Belser the maximum sentences for the charged offenses. The better practice would have been for the court to expressly do so for each charge. However, when the court started to inform Belser about the potential sentences for the charged offenses, defense counsel interrupted and stated that she had gone over the potential sentences with Belser multiple times and had discussed the issue with him at length. Counsel stated that Belser was "well aware" of the sentencing consequences. RP at 31. And the State noted that Belser could be sentenced to 210 to 280 months on an indeterminate sentence for the second degree rape charge.

In addition, the maximum sentence for count 1, as part of the indeterminate sentence, was life in prison. The trial court explained that Belser could remain in custody for life based on an ISRB determination. Therefore, Belser was aware that the maximum sentence he could receive as a result of the trial was life in prison. The record is sufficient for us to conclude that Belser was informed of his maximum sentence if he was convicted.

Third, the trial court did not expressly inform Belser that an indeterminate sentence was required for second degree child molestation. But as discussed above, the court did inform Belser that this was an ISRB case and that the ISRB could determine that he needed to remain in custody for the rest of his life. This discussion was sufficient to make Belser's waiver knowing and intelligent regarding this issue.

Fourth, the trial court did not expressly discuss with Belser the fact that the court could impose an exceptional sentence if he was convicted. However, the

REPORT AND RECOMMENDATION - 9

1

2

cases do not require that the trial court expressly address the possibility of an exceptional sentence. The requirement is that the defendant be informed of the maximum sentence. *Howard*, 1 Wn. App. 2d at 428-29. That maximum sentence necessarily would incorporate any exceptional sentence.

3

4

The record here establishes that Belser's waiver was knowing and intelligent. Accordingly, we hold that the trial court did not err in granting Belser's request to represent himself.

5

Dkt. 11, Exhibit 2 at 4-8.

6

7

8

9

10

11

12

13

14

Petitioner maintains that his waiver of the right to counsel was not made knowingly or intelligently because he was not specifically advised of the maximum penalty or the nature and classification of the charges that he was facing. Dkt. 4 at 16, 21. He does not dispute that he was not informed of the dangers of self-representation. *See id.* But even if he had, the record reflects that the trial judge went into detail as to the disadvantages of self-representation, both as a general matter and in relation to specific aspects of a trial. Dkt. 11, Exhibit 11 at 28-29, 32-34. Petitioner stated that he understood that he would be at a disadvantage representing himself because he did not have a mastery of the rules of evidence and criminal procedure. Dkt. 11, Exhibit 11 at 28-29.

15

16

17

18

19

20

21

22

23

The Washington Court of Appeals applied the correct legal standard to find that petitioner's waiver of counsel was knowing, voluntary, and intelligent. The record shows the adequacy of the warnings provided to petitioner as to the nature of the charges and the possible penalties. *See Faretta v. California,* 422 U.S. 806, 807 (1975). The Ninth Circuit has held that a "perfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver." *United States v. Robinson,* 913 F.2d 712, 715 (9th Cir. 1990). Rather, the inquiry is whether a defendant "understand[s] why he [is] in court and what charges [are] pending against him." *United States v. Lopez–Osuna,* 242 F.3d 1191, 1200 (9th Cir. 2000).

24

1    Here, the record reflects that petitioner possessed this understanding. The information set

2    forth the six charges against petitioner, included the name of each charged offense, the statute for

3    each crime charged, the victim of each crime, and the dates of each crime. Dkt. 11, Exhibit 10.

4    The information also indicated that particular counts were "most serious offenses" for the

5    Persistent Offender Accountability Act. Dkt. 11, Exhibit 10. The prosecutor orally stated the

6    crimes charged and petitioner received a copy of the information at his first appearance. Dkt. 11,

7    Exhibit 10 at 3-4. Petitioner's attorney (while still represented), Ms. Toth, reviewed the

8    information with petitioner and he waived a formal reading of the charges. Dkt. 11, Exhibit 11 at

9    6-7. Prior to trial, Ms. Toth told the judge that she had cautioned petitioner about self-

10   representation "especially based on the nature of the charges and the seriousness of them…" Dkt.

11   11, Exhibit 11 at 27.

12   The trial judge engaged in a colloquy with petitioner as to the waiver of counsel and the

13   invocation of the right to self-representation. Dkt. 11, Exhibit 11 at 28. In doing so, the trial

14   judge explained the seriousness of the charges. The record reflects that the trial judge specifically

15   asked petitioner if he understood that this was a "persistent offender's case, strike case," and

16   whether petitioner had discussed with his attorney. Dkt. 11, Exhibit 11 at 30. The judge then

17   explained the consequences of strikes in sex crime cases, noting "there's a lot at stake here." Dkt.

18   11, Exhibit 11 at 30. Petitioner replied that he understood but that he remained convinced that he

19   wished to proceed *pro se. See id.* In sum, the Court concludes that the state court's conclusion

20   that petitioner was advised of the risks of foregoing representation by counsel and knew of the

21   nature of the charges against him was not contrary to, or an unreasonable application of clearly

22   established federal law. *See United States v. Farhad,* 190 F.3d 1097, 1098 (9th Cir. 1999)

23   (holding that the defendant was "clearly appraised of the nature of the charges against him"

24

1    when he was "warned ... that he was charged with 19 counts" of mail fraud); *United States v.*

2    *Calhoun,* 143 F. App'x 28, 29 (9th Cir. 2005) (defendant's argument that he could only be made

3    aware of the nature of his charges by being informed of their elements failed to show that he did

4    not knowingly and intelligently waive his right to counsel).

5        With respect to the possible penalties, the trial judge told petitioner that he could face a

6    maximum of life as an ISRB case, emphasizing that petitioner could spend the rest of his life in

7    prison. Dkt. 11, Exhibit 11 at 34. Petitioner repeatedly stated that he understood. Dkt. 11, Exhibit

8    11 at 30-34. Following his conviction, petitioner was sentenced to a sentence of 350 months

9    imprisonment. Dkt. 11, Exhibit 1.

10        Under the circumstances here, petitioner was informed of the risk when the trial judge

11    told him that the maximum sentence as a part of an indeterminate sentence was that petitioner

12    could be confined for life. Dkt. 11, Exhibit 11 at 34.  Petitioner makes much of the fact that the

13    prosecutor stated that the sentencing range for the second-degree rape charge was 210 to 280

14    months and offers this as evidence that he was misinformed of the maximum penalties of his

15    charges. Dkt. 4, 12. However, petitioner ignores that the prosecutor's statement related to only

16    *one* of his pending charges, and the trial judge informed him that the ISRB could determine that

17    he remain in custody for life. *See* Dkt. 11, Exhibit 11 at 30, 34.  In addition, petitioner's

18    argument that his sentence of 350 months is based on the sentencing judge's action, and not from

19    the ISRB, Dkt. 12, is also unavailing. A defendant must only have a "general understanding" of

20    the possible penalties before waiving counsel. *Arrendondo v. Neven,* 763 F.3d 1122, 1130 (9th

21    Cir. 2014). A precise understanding of the exact range of potential sentences has not been

22    required. *Id.*

23

24

1    Petitioner's case can also be distinguished from other cases in the Ninth Circuit finding

2    that a defendant did not knowingly and intelligently waive the right counsel when the defendant

3    was misinformed of the possible consequences of a conviction. For example, in *United States v.*

4    *Forrester,* 512 F.3d 500, 505 (9th Cir. 2008), trial court misinformed the defendant of both the

5    potential maximum and a mandatory minimum – the court told the defendant that he faced 10

6    years in prison, but he actually faced a range of zero to 20 years in prison. In *Erskine,* 355 F.3d at

7    1164-65, the defendant believed that the maximum penalty was one year when the statutory

8    maximum was in fact five years. However, in the case at hand, petitioner repeatedly stated that

9    he understood that he was facing the possibility of life in prison, and the sentence imposed on

10   him after he was convicted was within the range described to him at the time he waived his right

11   to counsel. There is no evidence that petitioner was misinformed and petitioner's argument that

12   he misunderstood the possible consequences based on a comment from the prosecutor related to

13   one charge of second degree rape is not nearly as compelling as cases where the defendant was

14   plainly misinformed of the maximum sentence. Here, the record reflects that petitioner was

15   aware of the maximum penalty of life, and petitioner never expressed any confusion about the

16   possible sentences or the maximum penalty.

17   Petitioner's contention also ignores the focus of the analysis, which is whether a " ' fair

18   reading of the record as a whole' " indicates that the defendant " 'understood the dangers and

19   disadvantages of self-representation.' " *United States v. Audette*, 923 F.3d 1227, 1235 (9th Cir.

20   2019) (internal citation and quotation omitted); *accord United States v. McConnell*, 749 F.2d

21   1441, 1451 (10th Cir. 1984) (noting that "it would be absurd ... to believe that [the defendant] did

22   not make a knowing and intelligent waiver" simply because "[t]he court did not literally inform"

23   him of the charges and penalties and the dangers of self-representation when the defendant read

24

1    and understood the indictment, had already begun work on his defense, and was aware of the

2    seriousness of the penalty he faced)).  In the instant case, the exchange between petitioner and

3    the trial judge demonstrates that petitioner understood those risks and reflects more than a "mere

4    routine inquiry." *Von Moltke v. Gillies,* 332 U.S. 708, 724 (1948). The trial judge's efforts

5    detailed discussion of the hazards of proceeding *pro se* and were by no means a "hollow

6    compliance with the mandate of the Constitution." *Von Moltke v. Gillies,* 332 U.S. 708, 723

7    (1948). Thus, in view of Supreme Court and Ninth Circuit case law, petitioner had the

8    information, including the possible penalties, that he needed to make his decision "with eyes

9    open." *United States v. Erskine*, 355 F.3d 1161, 1169 (9th Cir. 2004) (citing *Faretta,* 422 U.S. at

10   835); *Campbell v. Virga,* 613 F. App'x 651, 652 (9th Cir. 2015).

11          Finally, Ms. Toth was present as standby counsel during trial and assisted before trial.

12   Dkt. 11, Exhibit 10, 11. While this is not itself determinative, it is an element that the courts

13   consider, and further supports the conclusion that petitioner's waiver of the right to counsel was

14   valid and that he was aware of the charges against him along with the possible penalties. *See*

15   *United States v. Lopez-Osuna,* 242 F.3d 1191, 1200 (9th Cir. 2000). Ms. Toth's participation was

16   limited by petitioner's right to represent himself, *see McKaskle v. Wiggins,* 465 U.S. 168, 177

17   (1984) (noting that "[i]f standby counsel's participation over the defendant's objection effectively

18   allows counsel to make or substantially interfere with any significant tactical decisions, or to

19   control the questioning of witnesses, or to speak instead of the defendant on any matter of

20   importance, the *Faretta* right is eroded."), but the Supreme Court and Ninth Circuit have both

21   "recognized the efficacy of hybrid representation to aid pro se defendants and protect the

22   integrity of the trial process." *Locks v. G.W. Sumner,* 703 F.2d 403, 407 (9th Cir. 1983).

23

24

1    Accordingly, petitioner has failed to carry his burden demonstrating that he did not

2  competently or intelligently waive his right to the assistance of counsel. Petitioner fails to

3  demonstrate that the state court's conclusion that his waiver of counsel and invocation of his right

4  to self-representation was unequivocal, voluntary, intelligent, and knowing. Instead, the facts and

5  circumstances in this case show that petitioner knowingly and intelligently waived his right to

6  counsel at trial elected to proceed *pro se*. *See, e.g., United States v. Feldman,* 830 F.2d 134, 135–

7  36 (9th Cir. 1987) (record plainly showed petitioner who appeared *pro se* throughout his trial and

8  appeal and repeatedly "referred to himself as 'counsel of record[ ]" on appeal, "knowingly and

9  intelligently waived his right to counsel and chose to appear *pro se*."). Petitioner fails to

10  demonstrate that the state court's adjudication of his claims was contrary to, or an unreasonable

11  application of, clearly established federal law. As such, both grounds for relief should be denied.

12    **C.  Evidentiary Hearing**

13    The decision to hold an evidentiary hearing is committed to the Court's discretion.

14  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

15  hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

16  entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

17  available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

18  state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

19  entitle petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

20  record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

21  court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to

22  hold an evidentiary hearing because, as discussed in this report and recommendation, petitioner's

23  grounds for relief may be resolved on the existing state court record.

24

### D.  Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of petitioner's claims or would conclude the issues presented in the petition should proceed further. Therefore, the Court concludes that petitioner is not entitled to a certificate of appealability with respect to the petition.

### E.  Conclusion

For the above stated reasons, the Court concludes that the petition should be denied. Petitioner has not shown that the state courts' adjudication of Grounds 1 and 2 was contrary to, or an unreasonable application of, clearly established federal law. The Court also finds that an evidentiary hearing is not necessary. Therefore, the Court recommends that the petition be denied and a certificate of appealability not be issued.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

August 14, 2020, as noted in the caption.

Dated this 16th day of July, 2020.


J. Richard Creatura
United States Magistrate Judge